**DEREK SMITH LAW GROUP, PLLC**
ZACHARY ALVAREZ, ESQUIRE
Attorney ID No. 338565
1628 Pine Street
Philadelphia, PA 19103
(267) 857-0866
zach@dereksmithlaw.com
*Attorneys for Plaintiff, Christopher Montgomery*

**IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| CHRISTOPHER MONTGOMERY,<br><br>Plaintiff,<br><br>v.<br><br>UNIVERSAL PROTECTION SERVICE, LLC d/b/a ALLIED UNIVERSAL SECURITY SERVICES<br><br>Defendants. | Civil Action No. |

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff, CHRISTOPHER MONTGOMERY ("Plaintiff" or "Mr. Montgomery"), by and through undersigned counsel, hereby sues Defendant UNIVERSAL PROTECTION SERVICE, LLC d/b/a ALLIED UNIVERSAL SECURITY SERVICES ("Defendant" or "Allied Universal"), and alleges, upon information and belief, as follows:

## I. NATURE OF THE ACTION

1. This is an action for unpaid wages, unpaid overtime compensation, liquidated and statutory damages, interest, attorneys' fees, and costs arising from Defendant's failure to pay Plaintiff for weeks of standby time, hours actually worked, and daily per diem that Defendant

promised and that Plaintiff earned while performing emergency disaster-relief armed security deployments in South Carolina and North Carolina following Hurricane Helene.

2. Plaintiff brings this action to recover unpaid minimum wages and unpaid overtime compensation under the Fair Labor Standards Act, 29 U.S.C. § 201, et seq. ("FLSA"), and, for the same underlying unpaid wages, statutory wage-payment claims under the South Carolina Payment of Wages Act, S.C. Code Ann. § 41-10-10, et seq., and the North Carolina Wage and Hour Act, N.C. Gen. Stat. § 95-25.1, et seq., together with common-law claims for breach of contract and unjust enrichment/quantum meruit pled in the alternative.

3. Defendant recruited Plaintiff and a team of similarly situated armed security officers out of its Maitland, Florida branch office to deploy on emergency disaster-relief contracts in the wake of Hurricane Helene, promised them specific standby, hourly, and per diem rates of pay, worked them for approximately three weeks, and then never paid them, despite Plaintiff's repeated, sustained efforts over nearly two years to get the matter corrected through Defendant's management and human resources personnel.

4. Defendant is a sophisticated, multi-billion-dollar employer with dedicated corporate payroll, human resources and legal departments, and has repeatedly been the subject of wage-and-hour litigation, government enforcement action, and settlements concerning its failure to timely and accurately pay hourly and security personnel. Defendant's conduct here, the total nonpayment of specifically promised wages sustained over nearly two years despite repeated, documented internal complaints, was willful within the meaning of 29 U.S.C. § 255(a).

## II. PARTIES

5. Plaintiff Christopher Montgomery is, and at all times material was, a resident of Casselberry, Seminole County, Florida, and is over the age of eighteen.

6. At all times material, Plaintiff was employed by Defendant as an Armed Security Officer.

7. Defendant Allied Universal is a security and facility services company that maintains one of its two co-equal corporate headquarters at 8 Tower Bridge, 161 Washington Street, Conshohocken, Montgomery County, Pennsylvania, within this District, and that is registered, and/or required to be registered, to do business in the Commonwealth of Pennsylvania. Defendant is also authorized to do business, and does business in, the State of Florida and throughout the United States, including in South Carolina and North Carolina, with a branch office located in Maitland, Florida, from which Plaintiff was recruited, assigned, and dispatched for the deployment described herein. Undersigned counsel will confirm and, if necessary, amend this Complaint to reflect the precise corporate name and registered agent of the Allied Universal operating entity that employed Plaintiff prior to or promptly after service.

## III. JURISDICTION AND VENUE

8. This Court has federal question jurisdiction over Plaintiff's FLSA claims pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 216(b).

9. This Court has supplemental jurisdiction over Plaintiff's state-law claims pursuant to 28 U.S.C. § 1367(a) because those claims arise from the same common nucleus of operative fact as Plaintiff's federal claims, namely, Defendant's nonpayment of wages earned during a single, continuous three-week disaster-relief deployment.

10. This court has personal jurisdiction over the Defendant because Defendants maintains a principal corporate headquarters within this District, in Conshohocken, Pennsylvania, and/or because Defendant has registered to do business as a foreign corporation in the Commonwealth of Pennsylvania. Pennsylvania law provides that qualification to do business as a foreign corporation is a sufficient basis for Pennsylvania courts to exercise general jurisdiction over the registrant. 42 Pa. Cons. Stat. § 5301(a)(2)(i). The United States Supreme Court has held that this registration-based general jurisdiction does not violate the Due Process Clause of the Fourteenth Amendment. *Mallory v. Norfolk Southern Ry. Co.*, 600 U.S. 122 (2023).

11. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1), (c)(2) and (d), because Defendant resides in this District for venue purposes: Defendant is subject to personal jurisdiction in the Commonwealth of Pennsylvania with respect to this action, as alleged in paragraph 10, and Defendant's contacts giving rise to that jurisdiction, including its Pennsylvania corporate headquarters in Conshohocken, are centered in this District, such that this District is where Defendant's contacts with the Commonwealth would be most significant.

12. At all times material, Defendant was an "employer" engaged in interstate commerce within the meaning of 29 U.S.C. § 203(d), and an enterprise with employees engaged in commerce, or handling, selling, or otherwise working on goods or materials that have moved in commerce, whose annual gross volume of sales made or business done is not less than $500,000, exclusive of excise taxes, such that Defendant constitutes an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of 29 U.S.C. § 203(s)(1)(A) ("enterprise coverage").

13. In the alternative, and independently, Plaintiff is individually covered by the FLSA because Plaintiff regularly and recurrently engaged in interstate commerce in the course of his employment, including by traveling across state lines between Florida, South Carolina, and North Carolina at Defendant's direction in furtherance of Defendant's business ("individual coverage").

## IV. FACTUAL ALLEGATIONS

14. Plaintiff was employed by Defendant as an Armed Security Officer.

15. In September 2024, in the aftermath of Hurricane Helene, which made landfall on or about September 26-27, 2024, Defendant sought to staff emergency armed-security deployments in the Carolinas to cover disaster-relief and business-continuity needs of its clients in the affected region.

16. On or about September 24, 2024, at approximately 6:31 p.m., Defendant's recruiter, Jennifer Brown, contacted Plaintiff and advised him that Defendant had an emergency deployment opportunity paying approximately $25.00 per hour for armed guard work.

17. Plaintiff advised Ms. Brown that he was interested, and Ms. Brown forwarded Plaintiff's information to the management team coordinating the deployment out of Defendant's Maitland, Florida branch office.

18. Defendant, through its management, organized the deployment into at least two teams: a South Carolina team of approximately fourteen to sixteen armed security officers, and a North Carolina team of approximately sixteen armed security officers. Plaintiff is informed and believes, and thereon alleges, that all members of both teams were subjected to the same pay

practices described herein and were likewise not paid for their standby time, hours worked, and/or per diem.

19. Defendant advised Plaintiff and the other deployed officers that standby time would be compensated at $25.00 per hour for eight hours per day, plus a per diem of $56.00 per day, until such time as each officer was placed on an active work shift.

20. Deployment work began on or about September 28, 2024, and continued for approximately three consecutive weeks, ending on or about October 18-19, 2024.

21. Week One – Standby (South Carolina). Plaintiff first traveled to South Carolina, where he and the other members of his team were required to gather and remain on standby, staying in a hotel while awaiting assignment to individual work contracts, for approximately one week. Consistent with Defendant's representations, this standby time was to be compensated at $25.00 per hour for eight hours per day, plus $56.00 per day in per diem.

22. Week Two – Active Deployment (South Carolina). Plaintiff was thereafter placed on an active work shift providing armed security services at a Bank of America branch location in South Carolina. During this second week, Plaintiff worked approximately fourteen to fifteen hours per day, seven days per week, at the same promised rate of $25.00 per hour, plus the same $56.00 per day per diem.

23. Week Three – Active Deployment and Temporary Promotion (North Carolina). After approximately one week working in South Carolina, Plaintiff received a call informing him that additional armed security officers were needed to cover the deployment in North Carolina. Plaintiff traveled to North Carolina and met with Mr. Hamilton, the director of Defendant's

North Carolina branch office. Plaintiff and other officers then spent approximately two days obtaining the weapons qualifications/certifications required for the North Carolina assignment.

24. Plaintiff was thereafter deployed to Asheville, North Carolina, an area heavily affected by flooding and looting caused by Hurricane Helene, and was informed that, due to the conditions in the area, he would be paid $30.00 per hour. Plaintiff worked approximately fourteen to fifteen hours per day, seven days per week, in Asheville, North Carolina, at the promised rate of $30.00 per hour, plus the same $56.00 per day per diem.

25. Defendant tracked, or caused to be tracked, the hours worked by Plaintiff and the other deployed officers, in substantial part, through team text messages exchanged among the officers and Defendant's management.

26. At the conclusion of the deployment, Plaintiff and the other officers were told to return home because the deployment had ended.

27. Despite the foregoing express and repeated representations regarding pay, Defendant failed to pay Plaintiff the promised standby rate, the promised hourly rates for hours actually worked (including hours in excess of forty per week), and/or the promised per diem, for any portion of the three-week deployment.

28. Following the deployment, Plaintiff repeatedly contacted Defendant's management and human resources personnel, by email and text message, copies of which are in Plaintiff's possession, in an effort to have his pay corrected. Each time, Plaintiff was passed along to another person within Defendant's organization, with no resolution and no payment.

29. Defendant terminated the employment of at least one other officer who complained about not being paid for the same disaster-relief deployment, which conduct is alleged herein as evidence of Defendant's knowledge of the violations described in this Complaint, its willfulness, and the surrounding pattern and practice, and is not asserted herein as a separate cause of action on behalf of Plaintiff.

30. Plaintiff continued to work for Defendant in his regular, non-deployment role for nearly two years while attempting, unsuccessfully, to have his deployment pay corrected. Having exhausted his efforts to resolve the matter informally, Plaintiff resigned his employment with Defendant effective June 30, 2026.

31. Defendant has, on multiple occasions over the past decade, been the subject of wage-and-hour class and collective actions, government investigations, and settlements concerning its failure to timely and accurately compensate hourly, security, and other frontline employees, including litigation alleging unpaid overtime tied to defective or interrupted timekeeping practices, and other litigation alleging that security officers were required to work "off-the-clock" without compensation.

32. These matters, among others, gave Defendant actual knowledge, well before the events giving rise to this action, of the importance of accurately and timely compensating its hourly workforce, including for standby time, overtime and premium or differential pay, under the FLSA and analogous state wage laws.

33. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered a loss of wages in an amount to be proven at trial, but in no event less than $5,700.00, exclusive of

liquidated, multiple, and/or statutory damages, interest, and attorneys' fees and costs recoverable under the causes of action alleged below.

34. As a further direct and proximate result of Defendant's conduct, Plaintiff has experienced significant emotional distress, including anxiety over the fear of losing his job for raising the issue with management, financial strain from being unable to timely assist his family with household expenses, increased credit card debt incurred to cover those expenses, and sleep disturbance related to having been away from his family for the deployment without knowing whether or when he would be paid for it.

35. Defendant knew, or showed reckless disregard for whether, its conduct in failing to pay Plaintiff and the other deployed officers violated the FLSA and applicable state wage-payment laws. Defendant's knowledge is evidenced by, among other things : (a) Plaintiff's repeated, documented complaints to multiple levels of Defendant's management and human resources personnel over a period of nearly two years, none of which resulted in payment or correction; (b) Defendant's status as a large, sophisticated national employer with dedicated corporate payroll, human resources, and legal departments, for which the total, sustained nonpayment of specifically promised wages is not attributable to an isolated administrative error; (c) Defendant's decision to track hours for this deployment through informal team text messages rather than its standard timekeeping systems; (d) Defendant's termination of at least one other officer who complained of the same nonpayment; and (e) Defendant's documented history of wage-and-hour violations and enforcement actions described in paragraph 31 above. Defendant's violations were therefore willful within the meaning of 29 U.S.C. § 255(a), entitling Plaintiff to a three-year limitations period for his FLSA claims.

**COUNT I**
**Violation of the Fair Labor Standards Act – Unpaid Minimum Wages (29 U.S.C. §§ 206, 216(b))**

36. Plaintiff realleges and incorporates by reference the allegations set forth in paragraphs 1 through 35 above as if fully set forth herein.

37. At all times material, Defendant was an "employer" and Plaintiff was an "employee" of Defendant within the meaning of 29 U.S.C. § 203(d) and (e), and Defendant was subject to enterprise and/or individual coverage under the FLSA as alleged in paragraphs 12 and 13 above.

38. Section 6 of the FLSA, 29 U.S.C. § 206, requires covered employers to pay covered employees not less than the applicable federal minimum wage for each hour worked.

39. For substantial periods during the three-week deployment described above, including standby time during which Plaintiff was required to remain assembled with his team and available for immediate assignment, and hours actually worked providing armed security services, Defendant paid Plaintiff nothing at all.

40. Because Defendant paid Plaintiff no wages whatsoever for these hours, Plaintiff's effective hourly rate of pay for the deployment fell below the federal minimum wage required by 29 U.S.C. § 206(a), in violation of that section.

41. Defendant's violation of 29 U.S.C. § 206 was willful within the meaning of 29 U.S.C. § 255(a), for the reasons set forth in paragraph 35 above.

42. As a direct and proximate result of Defendant's violation of 29 U.S.C. § 206, Plaintiff has been damaged and is entitled to recover his unpaid minimum wages, an equal

additional amount as liquidated damages, and reasonable attorneys' fees and costs, pursuant to 29 U.S.C. § 216(b).

**COUNT II**
**Violation of the Fair Labor Standards Act – Unpaid Overtime Compensation (29 U.S.C. §§ 207, 216(b))**

43. Plaintiff realleges and incorporates by reference the allegations set forth in paragraphs 1 through 35 above as if fully set forth herein.

44. Section 7 of the FLSA, 29 U.S.C. § 207(a)(1), requires covered employers to pay covered, non-exempt employees at a rate not less than one and one-half times their regular rate of pay for all hours worked in excess of forty in a single workweek.

45. At all times material, Plaintiff was a non-exempt employee performing armed security guard duties, and no exemption under 29 U.S.C. § 213 applies to the work Plaintiff performed.

46. During at least the second and third weeks of the deployment described above, Plaintiff regularly worked approximately fourteen to fifteen hours per day, seven days per week, well in excess of forty hours in each such workweek, including compensable travel time between duty assignments performed during Plaintiff's normal working hours.

47. Defendant failed to pay Plaintiff any overtime premium, or any wages at all, for the hours Plaintiff worked in excess of forty per week during the deployment, in violation of 29 U.S.C. § 207(a)(1).

48. Defendant's violation of 29 U.S.C. § 207 was willful within the meaning of 29 U.S.C. § 255(a), for the reasons set forth in paragraph 35 above.

49. As a direct and proximate result of Defendant's violation of 29 U.S.C. § 207, Plaintiff has been damaged and is entitled to recover his unpaid overtime compensation, an equal additional amount as liquidated damages, and reasonable attorneys' fees and costs, pursuant to 29 U.S.C. § 216(b).

**COUNT III**
**Violation of the South Carolina Payment of Wages Act (S.C. Code Ann. §§ 41-10-10, 41-10-40, 41-10-80)**

50. Plaintiff realleges and incorporates by reference the allegations set forth in paragraphs 1 through 35 above as if fully set forth herein.

51. This Count is brought for the wages Plaintiff earned while performing services in South Carolina during the first and second weeks of the deployment described above.

52. At all times material, Defendant was an "employer" within the meaning of S.C. Code Ann. § 41-10-10(1), and the standby pay, hourly pay, and per diem that Defendant promised and that Plaintiff earned constitute "wages" within the meaning of S.C. Code Ann. § 41-10-10(2).

53. S.C. Code Ann. § 41-10-40 requires employers to pay all wages due to an employee at the time and place agreed upon.

54. Defendant failed and refused to pay Plaintiff the standby wages, hourly wages, and per diem he earned for work performed in South Carolina, in violation of S.C. Code Ann. § 41-10-40.

55. Pursuant to S.C. Code Ann. § 41-10-80(C), Plaintiff is entitled to recover, for Defendant's failure to pay wages due under S.C. Code Ann. § 41-10-40, an amount equal to

three times the full amount of his unpaid South Carolina wages, plus costs and reasonable attorneys' fees.

## COUNT IV
## Violation of the North Carolina Wage and Hour Act (N.C. Gen. Stat. §§ 95-25.6, 95-25.13, 95-25.22)

56. Plaintiff realleges and incorporates by reference the allegations set forth in paragraphs 1 through 35 above as if fully set forth herein.

57. This Count is brought for the wages Plaintiff earned while performing services in North Carolina during the third week of the deployment described above, including his promised pay rate of $30.00 per hour and his promised $56.00 per day per diem.

58. N.C. Gen. Stat. § 95-25.13(1) required Defendant to notify Plaintiff, at the time of hiring for the North Carolina assignment, of his promised wages, and N.C. Gen. Stat. § 95-25.6 required Defendant to pay Plaintiff all wages accruing to him on the regular payday.

59. Defendant failed to pay Plaintiff any portion of his promised North Carolina wages, including his $30.00 per hour rate and $56.00 per day per diem, in violation of N.C. Gen. Stat. § 95-25.6.

60. Pursuant to N.C. Gen. Stat. § 95-25.22, Plaintiff is entitled to recover his unpaid North Carolina wages, plus interest at the legal rate set forth in N.C. Gen. Stat. § 24-1, an additional equal amount as liquidated damages, and reasonable attorneys' fees and costs.

**COUNT V**

**Breach of Contract (Pled in the Alternative)**

61. Plaintiff realleges and incorporates by reference the allegations set forth in paragraphs 1 through 35 above as if fully set forth herein.

62. This Count is pled in the alternative to Counts III and IV, to the extent any portion of Plaintiff's claims is found not to be governed by the South Carolina Payment of Wages Act or the North Carolina Wage and Hour Act.

63. Defendant, through its agents and representatives, including Jennifer Brown and Mr. Hamilton, offered and Plaintiff accepted an enforceable agreement to perform emergency disaster-relief security services in exchange for specific, agreed-upon compensation: $25.00 per hour for standby time (eight hours per day) and $56.00 per day per diem during weeks one, two and three; $25.00 per hour for hours actually worked (up to fourteen to fifteen hours per day) and his per diem during week two; and $30.00 per hour for hours actually worked (up to fourteen to fifteen hours per day) and his per diem during week three.

64. Plaintiff fully performed his obligations under this agreement by traveling to, and performing standby, and security duties in, South Carolina and North Carolina as directed by Defendant.

65. Defendant breached the agreement by failing to pay Plaintiff any of the promised compensation described above.

66. As a direct and proximate result of Defendant's breach, Plaintiff has suffered damages in an amount to be proven at trial, together with pre-judgment interest.

## COUNT VI
## Unjust Enrichment / Quantum Meruit (Pled in the Alternative)

67. Plaintiff realleges and incorporates by reference the allegations set forth in paragraphs 1 through 35 above as if fully set forth herein.

68. This Count is pled in the alternative to Counts III, IV, and V, in the event no enforceable contract for the specific pay rates alleged is found to exist.

69. Plaintiff conferred a direct benefit on Defendant by performing standby, and armed security services for Defendant's clients during the disaster-relief deployment described above.

70. Defendant knowingly accepted and retained the benefit of Plaintiff's labor under circumstances that make it inequitable for Defendant to retain that benefit without paying Plaintiff for it.

71. Plaintiff is entitled to recover the reasonable value of the services he provided to Defendant, in an amount to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Christopher Montgomery, respectfully requests that this Court enter judgment in his favor and against Defendant, Universal Protection Service, LLC, and award the following relief:

a. Unpaid minimum wages and an equal additional amount as liquidated damages, pursuant to 29 U.S.C. § 216(b);

b. Unpaid overtime compensation and an equal additional amount as liquidated damages, pursuant to 29 U.S.C. § 216(b);

c. Treble damages for unpaid South Carolina wages, pursuant to S.C. Code Ann. § 41-10-80(C);

d. Unpaid North Carolina wages, an equal additional amount as liquidated damages, and interest at the legal rate, pursuant to N.C. Gen. Stat. § 95-25.22;

e. In the alternative, damages for breach of contract and/or the reasonable value of services rendered under a theory of unjust enrichment/quantum meruit;

f. Pre-judgment and post-judgment interest as allowed by law;

g. Reasonable attorneys' fees and costs of this action, pursuant to 29 U.S.C. § 216(b), S.C. Code Ann. § 41-10-80(C), N.C. Gen. Stat. § 95-25.22(d), and/or as otherwise allowed by law; and

h. Such other and further relief as this Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,

**DEREK SMITH LAW GROUP, PLLC**

By: /s/ *Zachary Alvarez, Esquire*________

ZACHARY ALVAREZ, ESQUIRE
Attorney ID No. 338565
1628 Pine Street
Philadelphia, PA 19103
(267) 857-0866
zach@dereksmithlaw.com
*Attorneys for Plaintiff, Christopher Montgomery*

Dated: September 21, 2026

**VERIFICATION**

I, Christopher Montgomery, verify that I am the Plaintiff in this action and that the statements made in the foregoing Amended Complaint are true and correct to the best of my knowledge, information, and belief. I understand that false statements herein are made subject to the penalties of 18 Pa.C.S. Section 4904 relating to unsworn falsification to authorities.

Date: 09 / 28 / 2026

Christopher Montgomery

**CHRISTOPHER MONTGOMERY**